Jones, J.
The questions on this motion are two-fold:
1. As regards the bankrupt himself.
• 2. ■ As regards the other two defendants.
.First.—As regards the bankrupt himself: Section 21 of the bankrupt law of March 2, 1867, provides : “ That no creditor proving his debt or claim shall be allowed to maintain any suit at law or in equity therefor against the bankrupt, but shall be deemed to have waived, all right of action and suit against the bankrupt,, and all proceedings already commenced, or unsatisfied judgments already obtained thereon, shall be deemed to be discharged and surrendered thereby ; and no creditor whose, debt is provable under this act shall be allowed to prosecute to final judgment any suit at law or in equity therefor against the bankrupt, "until the question of the debtor’s discharge shall have been determined ; and any such suit or proceedings, shall, upon the application of the bankrupt, be stayed to await the determination of the court in bankruptcy on the question of the discharge, provided there be no unreasonable delay on the part of the bankrupt in endeavoring to obtain his discharge. And provided, also, that if the amount due the creditor is in dispute, the suit, by leave of the court in bankruptcy, may proceed to judgment for the pur.pose of ascertaining the amount due, which amount may be proved in bankruptcy, but execution shall be stayed as aforesaid.”
Considering this section by itself, the third clause appears at the first blush to apply to both the preceding ones. But on a closer analysis this is seen"not to be the case. The provisions ofthe third clause are wholly inconsistent with those of the first, as the same are there expressed. The third clause provides for a temporary stay until the question as to whether the bankrupt shall have a discharge or not is determined, while the language_used in the first, taken by itself, makes the bare act of proving a claim an absolute surrender forever of *223 all rights of action therefor, and of all suits at law or in equity thereon, and of all proceedings commenced, but not terminated, and of all judgments thereon, irrespective of the result of the application for a discharge.
From this it is evident that the provision for a mere temporary stay has no application, and could not have been intended to apply to that which was absolutely extinguished forever.
In this view, the third clause not applying to or operating on the first, neither the court of bankruptcy nor any court, except that in which the suit or proceeding might be pending or the judgment rendered, or a court of equity acting on a .bill filed, could stay proceedings in cases falling within the first section. The court in which the suit dr proceeding is pending or the judgment rendered, or a court of equity on bill filed, would have power by a perpetual stay or injunction_to enforce the voluntary surrender made by a .creditor by the act of proving his claim ; and it would be the duty of said court, on proper application, so to enforce it.
Such would be the power and ■ duty of the court on this motion, if the first clause of the section operates, as its language imports, as an absolute extinguishment forever of the cause of action and of this suit.
There are, however, other provisions of the bankrupt act in connection with which the first clause of this section is to be ¿onstrued, and which materially limit the effect of its general language. The words, then, of the first clause are to be read, and the three clauses construed, in reference to this limited meaning: Let us, then, inquire how far this limitation extends, and what effect it has on the construction of the three clauses.
The bankrupt act of 1841 contained a clause substantially the same as the first clause in question. The effect and meaning of that clause in the act of 1841 came under the considération of the late court of chancery, in the case of Haxtun v. Corse. In that case -the YiceChancellor held that under the provisions in question, *224 a creditor who proved his debt thereby surrendered his right of action, and was barred from maintaining any suit at law or in equity for his debt, and from enforcing any judgment he might have recovered therefor; and that lie could only obtain or claim payment of his debt under and by virtue of the proceedings in bankruptcy.
As under the bankrupt proceedings, the only property that could thereunder be subjected to'the payment of the bankrupt’s debts was that which he had at the time of his assignment, it followed that' from this doctrine that so far as previous creditors were concerned, it was wholly immaterial to the bankrupt whether he obtained a discharge or not, for in either event his future acquisitions were protected, and from this it followed that there was no motive for a proving creditor to exercise the right given him by the statute of opposing the discharge, because a successful opposition would be of no benefit to him, as he would not thereby acquire any gteater right than he" had before, nor’subject to the payment of his claim any property other than that already subjected thereto ; on the contrary, a successful opposition would be prejudicial to him, as subjecting the assigned property to liens acquired thereon by non-proving creditors prior to commencement of the bankruptcy proceedings, by means of judgments and bills in chancery. v
This result was seen by Chancellor Walwokth when the case of Haxtun v. Corse came before him on appeal (2 Barb. Ch., 506); he consequently disapproved of the doctrine of the vice-chancellor ; and, construing the clause in question in connection with other provisions of the act of 1841 (which other provisions are substantially contained in the present act), held that the bare fact of a creditor proving his claim did not, by operation of this clause, extinguish his right of action for the recovery and collection of his claim, but merely operated as a waiver of his right to institute any suit or proceedings at law or in equity which were any *225 way inconsistent with his election to obtain satisfaction of his debt under the bankrupt proceedings.
The learned chancellor well remarks that this is the reasonable construction of the clause, and the only one by which the evident intent of Congress, as gathered from a view of the whole statute, could be carried out; since, by it, while the proving creditor is prevented (whether a discharge be granted or refused) from subjecting the already acquired property of the bankrupt to the satisfaction of his debt otherwise than through the bankruptcy proceedings, yet, in the event of his successfully opposing the bankrupt’s discharge, he remained at liberty to enforce the collection of his claim out of after-acquired property by suit or action in equity or law. Thus it would become material to the bankrupt to obtain Jais discharge ; and a motive is furnished the proving creditor to oppose the discharge ; for if a valid discharge be granted, it would afford a complete protection to all after acquired property.
From this construction, it is evident that there are some suits and proceedings by a previous creditor which, by the bare act of the proving of the debt, irrespective of the determination of the question as to whether the bankrupt shall have his discharge, are surrendered and given up,—e. g., those the whole object and purpose of which is to operate on already acquired property, and that alone,—while there are other' suits and proceedings which are not affected by any express provision of the act other than that relating to the effect of a discharge when obtained, unless the clause in section 21, relating to a stay of proceedings, is applicable' to them. Of this class of proceedings are ordinary actions at law for the recovery of a contract .debt, and judgments rendered in such actions. For although, any lien obtained by reason of such judgments is surrendered and given up by the act of proving the debt,, yet the same reasoning which leads to the conclusion that the right of action is not extinguished by that act,. *226 also leads to the conclusion that such suits and judgments, so far as they may affect and fasten on after-acquired property in case a discharge is not granted, are not surrendered.
I am aware that in Haxtun v. Corse the chancellor dismissed the bill on the ground that its maintenance would be in violation, of the clause in question, contained in the Bankrupt Act of 1841; but in that case the bill was filed to reach, and to subject to the payment of judgments rendered at law, the already acquired property of the defendant.
The dismissal was in perfect accord with the foregoing' reasoning.'
It is true the learned chancellor uses the following language : “The statute does not merely suspend suits in the situation in which they are gt the time the creditors come in and prove their debts. But all proceedings which have been commenced before that time are absolutely relinquished, surrendered, and discontinued ; by the mere act of proving the debt for the recovery of which such proceedings were instituted.” But I submit that this language was used in reference to suits and proceedings of the nature of the one then pending before him. Its application to suits and judgments other than those which had for their sole end the subjection to the payment of the claim, or the enforcement of a lien on the already acquired property, would be antagonistic to the previous reasoning of the learned judge. The statute was just as strong against the creditor retaining any right of action whatever for the debt, as against his maintaining any suit therefor. The learned judge well held that the right of action was not extinguished by the act of proving the debt, but that ■the proving creditor was only barred from instituting suits or proceedings inconsistent with his election to obtain satisfaction of his debt under'the bankruptcy proceedings; and that it was not inconsistent with such election for him, in case a discharge was refused, to *227 reach after-acquired property by action or suits at law or in equity.
The bare retention of a judgment, recovered prior to the filing of the bankrupt’s petition, and the pendency of an action commenced-prior to that time, are not inconsistent with such election until a valid discharge has been obtained. They do not, in any way, interfere with the bankruptcy proceedings. A surrender of them, prior to such discharge, does not aid, or remove any obstacle to, the conduct and effect of the bankruptcy proceedings under the provisions of the act.
It would, on the other hand, needlessly harass and prejudice the creditor in the event of a valid discharge not being granted; for then, to obtain his rights, he would have to institute a new action, and go through a more or less tedious and exjcensive litigation to arrive at the same point at which he was when the petition was filed, involving a total loss of the expenses previously incurred, and also subjecting him to the objections that, his' right of action being, merged in the former judgment, which has been surrendered, he has no standing in court, and that the statute of limitations has run.
To require such surrender,' then, is not' only objectless, as nothing is to be thereby gained by the bankrupt or his other creditors, but may be highly prejudicial to the creditor who holds such judgment, or who has commenced such an action.
I am satisfied, therefore, that if the facts in the case of Haxtun ». Corse had indicated to the learned chancellor that there were judgments and actions, the object whereof was not solely to affect already acquired property, he would have drawn the above distinction, and modified his general language so as to express it.
Although, then, the general language of the first clause of the section in question, taken by itself, would call for an absolute surrender forever, yet the other *228 provisions of the act show that this general language is to The used in reference to the subject-matter of this legislation only, and as only calling for such surrender as is requisite to carry out the objects and end contemplated by the act.
Expressing in words the implied limitations thus imposed on the general language used in this first clause by the other provisions of the act, it will read thus: No creditor proving his debt or claim shall be allowed to subject to the payment of his debt or claim the property belonging to the bankrupt at the time of filing his petition, by any suit at law or in equity against the bankrupt, but shall be deemed to have waived all right of action or suit against such property of the bankrupt, and all proceedings already commenced, or unsatisfied judgments already obtained thereon, shall be deemed discharged and surrendered thereby, so far as they shall affect such property of the bankrupt.
■ Under this construction, there are suits, actions, and proceedings, by proving creditors, and also judgments held by them of a nature above indicated, which are not surrendered and given up by the act of proving the debt or claim. To this class of actions, proceedings, and judgments, the third clause might perhaps be held to extend, notwithstanding the objection that, as the language of that clause, if it applies at all, extends to all suits, etc., embraced in the first clause, it cannot be regarded as being intended to apply to only part.
It is not worth while to discuss this point; for this class of actions, etc., comes within the second clause, to which the third clause is clearly applicable ; they are suits at law or in equity by a creditor whose debt is provable under the act; the fact that he has proved his debt does not change its provable character.
Under, then, the operation of the second and third clauses, this motion, so lar as the bankrupt is concerned, must be granted, unless some c ause of the act, not yet adverted to, restrains such operation.
*229 Section 33 contains tlie following clause: “No discharge granted under this act shall release, discharge, or affect any person liable for the same debt, for or with the bankrupt, either as partner, joint contractor, indorser, surety, or otherwise.”
It is a well established principle of law, that in cases ' of partners and joint contractors, an action must be'brought against all the partners and all the joint contractors, and must proceed against them all, and the judgment to be rendered must be a joint judgment against all, unless one or more of them shall have died, or have been discharged from the obligation of the contract or indebtedness by operation of law, not attributablé to the voluntary act or omission of the creditor.
If, then, the'stay provided for by the twenty-first section affects this class of actions, the result would be that one defendant, by filing a petition in bankruptcy, would stay proceedings against all the others, and thus not only subject the creditor to delay in the collection of his claims against the others for a period, more or less long, in some instances perhaps to one or two years, but also expose him to the danger of loss of his claim from the fluctuations in the fortunes of those others.
This would give to the mere filing of the petition a greater effect than the discharge, which is the end to be obtained by the petition, has.
There is, therefore, an inconsistency between the two clauses, and the question arises which is to yield to the other.
Of the two, that one must yield, the non-enforcement of the provisions whereof to their full extent will least interfere with the part it is designed to take in carrying out the objects and purposes of the act taken as an entirety.
One of the objects and purposes of the act was not to interfere with or impair the right of creditors against co-partners, or co-joint contractors, with the bankrupt. *230 This object is to be carried out through the above cited claiise in section thirty-three.
A non-enforcement of this section-to its full extent, caused by a stay granted under section twenty-one, would materially interfere with the object to be attained thereby,' and there would be no means by which that object could be attained.
There are other objects and purposes of the act, viz:
1st. That the already acquired property of the bankrupt shall not be subjected to the payment of his debts, by means of a judgment recovered after the filing of the petition, or of proceedings had on such j adgment.
2nd. That the bankrupt shall not be needlessly subjected to actions and suits.
3rd. And, perhaps, to enable the bankrupt to claim protection as against such actions and suits, through his discharge, if he obtains it.
These are the only purposes and objections which the clause for a stay in section twenty-one can, by any possibility, be supposed designed to carry out.
It is not necessary to give effect to this clause for a stay, to its full ext'ent, to carry out these purposes.
Let us take them in the inverse order.
A bankrupt can obtain the full protection of his discharge after as well as before judgment, on application to the court in which the action is pending. Indeed, in case of judgment rendered prior to the filing of the petition, the bankrupt’s only remedy, in every case, is by such application to the court which rendered the judgment, or a court of equity.
The commencement and prosecution of an action against a bankrupt, together with his co-partners or co-joint contractors, and the rendering of a joint judgment therein, is not needless, but absolutely necessary. It is not, therefore, requisite to apply the clause for a stay, to such cases, in order to carry out the second object.
Section 14 enacts that the assignments to be made thereunder shall relate back to the commencement of *231 the proceedings in "bankruptcy ; consequently, no judgment rendered "en a provable debt, nor any proceedings had thereon, can create a lien, or subject to the payment of the debt any already acquired property of the bankrupt. The stay, therefore, is unnecessary for this purpose.
It may be suggested that the object of the clause was to prevent a conflict of jurisdiction which might arise if the creditors were allowed to proceed to judgment. This- cannot be.- All courts in the United States are' bound to carry into effect the constitutional acts of Congress according to their true intent and meaning, and it cannot be answered that Congress was unaware of this, or, being aware of it, legislated on the hypothesis that the courts would not perform then-duty. The-court in which a judgment is rendered has full power to give effect to the provisions of the act respecting the application of already acquired property of the" bankrupt to the payment of debts or claims, by staying all proceedings to make the judgment a lien on, or to collect it out of such property, and there can be no question but that, when called on, it will exercise ,such power.
It is clear that the non-enforcement of the clause for a stay to such an extent as to interfere with the, clause in section 33, will interfere less with the part it is designed to take, than the non-enforcement of the clause" in section 33 will interfere with its part. The clause for a stay, therefore, must yield.
The various conclusions arrived at seem to me to be just to the creditor as well as to the bankrupt, and not to interfere, in any respect, with the attainment of the objects sought by the Bankrupt Act.
The stay as asked for must be denied as far as the bankrupt is concerned, but all proceedings on any judgment that may be obtained against him must be stayed until the further order of the court.
Second. With respect to the two other defendants.
*232 The Bankrupt Act does not in terms enact that the adjudging one a bankrupt, or the giving him a discharge, or the proving the debt against him, shall discharge his co-joint debtors, or his sureties, from the debt, or prevent the creditors from pursuing and recovering from them. Nor is there any provision that the claim of the proving creditor against joint debtors with, or sureties for the bankrupt, shall be assigned, or given up by the creditors to the assignees. Indeed, such provisions would be manifestly absurd. The claim of the creditor against the surety of the bankrupt is, in no sense, the property of the bankrupt. The bankrupt has no right or interest in it, consequently can transfer none to his assignee ; he could not enforce the claim himself, nor can his assignee, claiming through him. If the creditor enforces his claim, and collects it from the surety, the property of the bankrupt is not impaired thereby; the same amount of property that was before distributable remains still distributable ; and the enforcement of the claim against the su¡ety does not increase the amount of the bankrupt’s indebtedness. A provision that should compel a proving creditor to assign his claim against a surety for the bankrupt to the assignee in bankruptcy, and' permit such assignee to sue and recover against the surety, would lead to these startling results.
1st. It would separate the mere security from the principal debt.
2nd. It^would compel the surety to part with his properly to his principal, to whom he owes no duty and is not indebted, for the purpose of having that'property applied contrary to his contract to the payment of all debts of the bankrupt.
The same remarks, as well as other more forcible ones, are applicable to joint debtors.
The case of Haxtun v. Corse (4 Edw. Ch., 588, and on appeal in 2 Barb. Ch., 531, 532), cited by defend *233 ants’ counsel, does not contain any such startling proposition.
They simply hold, that under sections 3 and 5 of the act of 1841, which contained substantially the same provisions as sections 14 and 21 of the present act, the bankrupt’s right of property passed to the assignee, and that any lien obtained by a proving creditor by a judgment or bill filed in equity on the rights of property of the bankrupt, were divested by the act of proving the claim.
The English case in 4 Younge & C., also refers to property of the bankrupt, and is founded on provisions in the English act which are not contained in ours.
I am not, therefore, called upon by any of the provisions of the Bankrupt Act to grant this motion as to these two defendants.
Indeed,.the act itself provides “no discharge granted under this act shall release, discharge, or affect any person liable for the same debt for or with the bankrupt, either as partner, joint creditor, indorser, surety, or otherwise.”
The filing of a petition, which is merely the act of setting on foot a proceeding to obtain, as its end, a dis- ° charge, cannot have a greater effect than the discharge itself.
Motion as to these two defendants denied;
Motion denied without costs to either party; but all proceedings on any judgment that may be obtained against defendant, James Free!, to be stayed until the further order of the court.