Selden, J.,
delivered the opinion of the court:
It is, perhaps, not very important, so far as the questions argued at the hearing are concerned, to determine whether the power of sale conferred upon the executors by the first clause of the will in question is to be regarded as imperative, or merely discretionary, or whether we treat the property as remaining partly real and partly personal, as at the death of the testator, or as all converted into personalty. If, however, it is deemed to have any bearing upon the questions presented, there can, I think, be no doubt, from the terms of the power and the general provisions of the will, that the testator intended that the whole real estate, except that portion devised to the widow, should be sold and converted into money, prior to the general distribution provided for in the twentieth clause of the will, and that, upon the established principles of equitable conversion, this should be considered as done.
As, by the provisions of the will, the testator disposed of his whole estate, leaving nothing whatever to be distributed, as in cases of intestacy, provided the will is executed according to its terms, the only questions presented relate to the validity of the various dispositions made by the will. The principal objection to these dispositions is based upon the statute prohibiting accumulations of income, except for certain purposes. *77 But, before considering this main objection, let us first dispose of several others of minor importance which are presented in the case. The numerous dispositions to religious and charitable uses are, for the most part, conceded to be valid, unless the entire will is subverted in consequence of its scheme of accumulation. The only specific objection of any weight to this class of legacies is that made to the bequest, in the seventeenth clause of the will, of $50,000 to the executors for the establishment of a college in Liberia.
It is doubtful whether the object to which this fund is to be devoted, as described in the will, is sufficiently definite to support the bequest, even if there were no other objection to its validity. The peculiar doctrines of the English Court of Chancery, in respect to charitable uses, having never been adopted in this State, trusts for such purposes cannot be sustained, unless the object of the trust is defined with clearness and precision. There is, perhaps, a difficulty also as to the title to this fund after the college should be established. The trust to the executors is simply to apply the money for the purpose indicated in such way as their judgment shall dictate. No provision is made for the ownership of the property into which the fund may be converted. It does not seem to be contemplated that the title of the executors should continue after the application of the money; and yet no provision is made for its transfer, and no trustees are substituted. It is essential to the creation of every trust, that a competent trustee be appointed to receive the title and execute the trust.
It is unnecessary, however, to pass upon either of these questions, as there is another objection to this legacy which is entirely fatal to its validity. It is not only made to depend upon a contingency, but a contingency which may never happen ; and yet there is no limitation whatever to the period of suspense. If the legacy is valid, the executors would be bound to provide a fund for its payment, and the absolute ownership ' of this fund would, of course, be suspended in the meantime, as the legacy could not become vested until the happening of the contingency. Such a legacy is in direct contravention *78 of the statute against perpetuities. A provision limiting the period for rai^ng the $50,000 to the continuance of two lives in being at the death of the testator, would have obviated this objection; but, as no such provision was. inserted, the legacy is clearly void, irrespective of the other objections which have been suggested;
An exception was taken to that part of the judgment of the Supreme Court in which it was held that the paper purporting to be a promissory note for the sum of $100,000, dated November 25, 1853, and payable, by the terms of the accompanying writing, to Anson Gr. Phelps, Jr., or order, five years after date, was void; and we have been favored with a very elaborate and ingenious argument to prove its validity. It is impossible, however, to obviate the objection that the promise was wholly without consideration. The note cannot be separated from the writing which accompanied it, and of which, indeed, it formed a part; and, although it contains the words, “ for value received,” yet the inference from these words is effectually repelled by other parts of the same instrument. The argument, therefore, drawn from the use of these words, is without weight. The promise was clearly a nudum, pactum, and there is no theory upon which it can be legally sustained. A design to make a gift for benevolent or charitable purposes must be executed, or it is ineffectual. A mere promise to make a future gift, whatever may be its object, or the circumstances under which it is made, is void. (Harris v. Clark, 3 Comst., 93.) Much of the argument by which it was attempted to sustain the validity of this promise applies exclusively to promises made for the direct benefit of a wife or child, and has no application to a case where the child, although the promisee, is in no respect the beneficiary of the promise. The Supreme Court, therefore, was clearly right in holding this pote to be void; and it seems hardly expedient to encourage further litigation on the subject by reserving to the parties beneficially interested the right to commence a new suit with a view to sustain its validity. The provision in the decree, to that effect, should, I think, be stricken out.
*79 A question of some importance arises under the twenty-first provision of the will, which disposes, upon the decease of the widow, of the fund set apart to secure her annuity of $5,000. It is objected to this provision that it suspends the absolute ownership of the fund .beyond the continuance of two lives. A distinction is taken by the Supreme Court between the first and second clauses of this provision, which is rendered immaterial by the death of the widow. The distinction is not, however, I think, well founded. The provision is, that if the widow shall die before the division of the residue of the estate, then the fund shall fall into and make a part of such residue; but, in case she shall live beyond that period, then it shall be distributed as therein provided. • How, neither clause of this provision would necessarily suspend the absolute ownership for more than two or even more than one life. The final distribution of the fund might have occurred under either cláuse, in consequence of the expiration of the ten years and the death of the widow combined, without the termination of the life of ■ Anson Gr. Phelps or of Mr. Dodge. But, before a distribution could be .made under either, one or the other of two alternative contingencies must have happened. The three lives must have terminated, or ten years must have expired. Both these alternatives are in conflict with the statute: one, because it suspends the absolute ownership in fact for more than two lives; the other, because it suspends it for a definite period, which may exceed the duration of any two lives which might be selected. There can be no doubt, therefore, that the disposition which the provision in question makes of the widow’s fund, after her decease, is void. What, then, becomes of that fund?
Ordinarily, upon the failure of such a provision, the fund, if consisting of personalty, would fall into the bulk of the estate, and go to the residuary legatees, where a residuary clause is contained in the will. But here the residuary clause itself, taken in connection with the fourth clause, which provides for the creation of the fund, is open to the same objection which defeats the provision in the twenty-first clauge, *80 The operation of the fourth and twentieth clauses, combined, would necessarily suspend the absolute ownership of the fund for three lives, or for a definite period of ten years, in connection with a single life; neither of which is allowed by the statute. This fund, therefore, cannot be subjected to the operation of the residuary clause, but must be distributed to the next of kin.
We come now to the consideration of the main objection made to the will. It is insisted that, as a whole, it conflicts with the statute prohibiting accumulations of income, and is therefore void, either in toto, or, at least, in respect to many of its principal provisions.
The will contains no express directions whatever for any accumulation; but the position of the counsel for the appellants is, that it was framed upon a plan, or scheme, the object of which plainly was to provide for the payment of debts, and of a very large amount for charitable and other legacies, out of accumulated income, leaving the corpus of the estate to be divided at the close of the period of suspension, undiminished by the payment of those debts and legacies, and even increased by advances in value, and the surplus of the accumulations.
It is, no doubt, true, as assumed by the counsel, that implied directions to accumulate are as much within the prohibition of the statute as those expressly given. If, therefore, upon comparing the provisions of the will with the condition of the estate, it is apparent that the testator intended an unauthorized accumulation, this intention cannot be carried into effect, and any provision of the will which is dependent upon it is void. This, however, is never permitted to affect any portion of the will not necessarily connected with the illegal accumulation, and which can be readily executed independently of it.
We are called upon, therefore, to look through this will, and ascertain, if possible, from its various provisions, taken in connection with the proof as to the nature, condition and amount of the estate, the intentions of the testator as to the income of that estate during the period for which the will renders it inalienable. We are furnished by one of the counsel *81 with a statement, preceding his points, which, in my view, throws considerable light upon this subject. It purports to show the result of paying the debts other than mortgages, and all legacies to be paid within ten years from the testator’s death, out of the principal and accumulated income. In making this statement, a serious mistake occurred in the outset as to the amount of the debts. It nevertheless shows, after allowing for this error, that the debts, together with the legacies, to be paid from time to time within ten years, amounting, in the aggregate, to nearly or quite a million of dollars, would be about equaled by the income of the estate during that time,’supposing such income to be accumulated whenever there was a surplus. If, instead of being accumulated, the surplus should be distributed at the end of each current year, the aggregate income would, of course, be less; but, still, the disparity between its amount and that of the payments would not be very great. The payments are so distributed by the will, throughout this series of years, that they would be made, to a great extent, from income, whether it was accumulated or not.
From these facts it may, I think, as the appellant’s counsel claim, be fairly inferred, that the testator intended that the sums falling due, pursuant to the will, within the ten years, should be paid out of the income of the estate, and that one object of postponing the distribution of the residue was to provide for the payment of these sums, without essentially diminishing the amount to be distributed under the residuary clause. But, does it follow that the will, or any portion of it, is void ?
Before answering this question, it will be well to consider what a testator has a clear right to do, without violating any statute. First, then, he may suspend the absolute ownership of his estate, and render it inalienable, during the continuance of two lives in being at his death. Secondly, he may, during this suspension of ownership, dispose of the income annually as it accrues, but cannot direct its accumulation except for a single purpose. Thirdly, he may give vested legacies and provide for their payment at a future definite period. As *82 these dispositions may unquestionably each be made separately, what prevents their being made in combination ? No principle of law or statutory provision is violated by so doing. This is precisely what is done by this will. The whole estate is converted into personalty, and the absolute ownership suspended for ten years, if the-two lives selected should continue for that time. Legacies are then given, and the payments so adjusted as substantially to absorb the income as fast as it should accrue. This adjustment is not, and probably could not be, very exact and precise. In some of the years, the payments Would be greater than the income, in others less; but these variations are not such as to affect the inference to be drawn as to the testator’s object and intent.
There being no express direction to accumulate the surplus income, if at any time a surplus should remain, I see no reason why such a direction should be implied. It is true, it would appear, from the statement referred to, that, without such an accumulation, the aggregate income for the ten years would not be equal to the payments to be made during that time. But this statement is based upon the assumption that real estate worth over a million of dollars would continue to yield during the entire period an annual income of only $34,000, while the testator may well have supposed that this would be sold and the proceeds invested so as to yield a much larger sum. I see nothing whatever to repel the supposition that the testator expected the annual income, without any accumulation, to be about equal to the annual payments to be made during the ten years. If this was his expectation, the will in this respect would be unobjectionable. Any accidental surplus, upon that assumption, would be so much assets undisposed of by the will.
But, even if it be assumed that the testator intended the surplus income, if any, to be accumulated, and carried forward to the end of the ten years, the result would be the same. This implied direction would be void, but no other provision of the will would be thereby affected. Nothing whatever is made to depend upon such an accumulation. Every provision *83 could be executed as well without as with it. Its effect would be simply to increase slightly the ultimate fund to be distributed among the residuary legatees. It would be the duty of the executors, therefore, whether an accumulation was or was not intended, to distribute any surplus of income accruing in any year, beyond the payments for that year, among the persons entitled to it. It becomes necessary, then, to inquire, to whom this surplus would belong.
By section 40 of the statute concerning the creation and division of estates (1 R. S., 726), it is provided, that, when the absolute ownership, or power of alienation, of real estate is suspended, and the rents and profits in the meantime are neither disposed of nor directed by any valid provision to be accumulated, “ such rents and profits shall belong to the persons presumptively entitled to the next eventual estate.” It has been held, in some cases, that this section applies to the income arising from personal property, the absolute ownership of which is suspended by force of the statute concerning accumulations of personal property and expectant estates in such properly. (1 R. S., 773; Haxton v. Corse, 2 Barb. Ch., 518; Craig v. Craig, 3 id., 93; Kilpatrick v. Johnson, 15 N. Y., 322.) In none of these cases does the question appear to have received much consideration. As an original question, it would admit, perhaps, of considerable doubt.
But it is unnecessary to pass upon this question here. If section 40 of the statute concerning estates in lands is applicable at all to the income of personal estate, it can only apply to a case where that income is derived from some specific fund, or, at least, from property so situated that its income can be readily distinguished from that of all other property. Neither in terms nor in reason is it applicable to any other case. The statute is founded upon the presumption that the donor of property may naturally be supposed to intend that the income should go to the same person to whom he had given that out of which the income arises. Nothing, therefore, can properly be held to pass under it but income which proceeds from the specific property in which the future interest exists.
*84 The legacies in this case amounted to more than a million and a half of dollars. Very little of this amount was payable until several years after the testator’s death, and, in the meantime, the fund out of which it was to be paid was productive of income. No interest whatever is given by the will to the residuary legatees in that portion of the estate which is devoted to tfte paymept of the specific legacies; and yet, if the statute is held to apply, those legatees would enjoy the benefit of any Surplus income which might accrue from that, as well as the residue of the estate, It would be impossible to distinguish between the income of the fund belonging to the specific legatees, and that derived from the residue of the estate, as the legacies were payable out of both income and principal. The case cannot, therefore, in any viery be brought within the provision of the statute; and hence, if, after deducting the payments for any year from the income of that year, a surplus of income shopld remain, that surplus would belong, not to the residpafy legatees, but to the next of kin; and the accounts of the executors, for past as well as future years, should be settled upon that basis,
It was held by the Supreme Court tftat the executors had np right to anticipate, by a rebate of interest or otherwiee, th,e payment of any of the legacies given by the fifth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, ,and ■nineteenth clauses of the will. This, I think, is correct, spfar as the installments to be paid prior to the distribution of the .estate, under the twentieth clause of the will, are .concerned; for the reason that it was the plain intent of the testator that these installments should be paid from the income of the estate, and to permit them to be anticipated would tend, to some extent, to defeat this intent. This reason, hpweyer, has no application to subsequent installments. Upon the distribution among the residuary legatees, .the whole scheme pf the will will have been consummated. No application of income aftpr that time was contemplated, or none with which an anticipation of the payments would at all interfere. I see, therefore, no objection whatever to any fair arrangement which the execu *85 tors may see fit then to make, for anticipating the remaining installments of the legacies.
There are, I think, no' other questions which it is important to consider. The judgment of the Supreme Court will only require one or two slight modifications to make it conform to the foregoing principles; and, in all other respects, it should be affirmed.-
All the judges concurring,
Judgment accordingly