REBECCA GALLAGHER et al., Appellants, *v.* SUSAN CROOKS et al., Respondents.

SAME, Appellants, *v.* SAME, Respondents.

To cut off the right of an heir to inherit there must be a legal devise; mere words of disinheritance are insufficient to effect that purpose.

Where, therefore, a testator fails to make a legal devise of his realty, or having legally devised it, the devise fails for any cause, the heir will inherit notwithstanding there is an express provision in the will that he shall not take any part of the estate.

*It seems,* the word " relations," when used in a will relating to personalty, only embraces persons within the Statute of Distribution.

As to whether the word when used in a devise is limited to persons within the Statute of Distribution, or to those within the Statute of Descent, *quære.*

In an action of ejectment the following facts appeared: The premises in question belonged to one G., who died leaving a will, by which he devised and bequeathed his property to his widow for life, subject to an annuity to his brother J.; after her death he provided for the payment of certain bequests and directed that the remainder, if any, be equally divided between the children of J. G. and all the testator's relations by his father's side in the United States at the date of his will,

subject to the payment of said annuity to J. The will then provided as follows: "He (J.) is to have nothing from my property, and I hereby cut off from inheriting any thing or property of mine his wife, or any person in any way related to her, either by blood or marriage, with the exception of himself, and he only in the way I have stated above." After the death of the testator's widow this action was brought by the widow, the children and grandchildren of J. Plaintiffs gave evidence tending to show that J. G. died unmarried and without children, and that the testator had no relatives living in the United States at the date of his will or death who were descended from his grandfather or father, other than plaintiffs. *Held,* that while the burden was upon plaintiffs of showing that there were no persons living who could take as remaindermen, it was sufficient to make out a *prima facie* case, and as their evidence showed the existence of any such person to be improbable, it was sufficient for that purpose, and that, therefore, a nonsuit was error.

(Argued March 16, 1892; decided April 19, 1892.)

APPEALS from judgments of the General Term of the Supreme Court in the first judicial department, each of which was entered upon an order made July 18, 1890, which affirmed a judgment in favor of defendants entered upon an order nonsuiting plaintiffs on trial at Circuit, and also affirmed an order denying motions for a new trial.

The nature of the actions and the facts, so far as material, are stated in the opinion.

*Robert O. Byrne* for appellants. The court erred in dismissing the complaint upon defendants' motion, and in not allowing the case to be given to the jury. (*North Brookfield* v. *Wainer,* 16 Gray, 174; *Whitelock* v. *Baker,* 14 Ves. 514; 26 How. Pr. 244; *Conjotte* v. *Ferrie,* 23 N. Y. 90; *Jackson* v. *Bonham,* 15 Johns. 226; *Russell* v. *Jackson,* 22 Wend. 276; 1 Greenl. on Ev. § 103; *Monkton* v. *Atty.-Gen.,* 2 R. & M. 165; *Johnson* v. *Todd,* 5 Beav. 599; *Doe* v. *Griffin,* 15 East. 293.) An escheat cannot take place. (*Jackson* v. *Jackson,* 7 Johns. 214; 2 Black. Comm. 245, chap. 15; 3 Jarman on Wills, 704, 705; *Johnson* v. *Johnson,* 4 Beav. 318; *Pickering* v. *Stamford,* 3 Ves. 493; *Underwood* v. *Wing,* 4 DeG., M. & G. 633; 8 H. L. Cas. 183; Theobald on Wills, 443; 2

Redfield on Wills, 163; *Brown* v. *Hope*, L. R. [14 Eq.] 343; *Kimball* v. *Story*, 108 Mass. 382; *Fitch* v. *Weber*, 6 Hare, 145.)

*R. B. Gwillim* for respondents. In actions of ejectment plaintiffs must recover upon the strength of their own title, and cannot depend upon the weakness of the title of the defendants, or upon the fact that the defendants may have no title whatever beyond the presumption of title arising from the fact of being in possession of the property at the time the action was commenced. (*Roberts* v. *Baumgarten*, 110 N. Y. 385; *Wallace* v. *Swinton*, 64 id. 192.) The testator, being of sound mind, had the right to disinherit his brother and his children and descendants by his wife Rebecca. (*Howland* v. *U. T. Society*, 5 N. Y. 217.) If there was any person answering to the description of a child of John Grady, or a blood relative of the testator's father, at the time of the making of his will, the whole remainder, including the premises in dispute in this action, descended to, and became vested in, that one. The devise was to the children of Grady, and the blood relatives of the testator's father as a class, and if but one, he took the whole; and if more than one, they took equally. (*Hoppock* v. *Tucker*, 59 N. Y. 202; *Page* v. *Gilbert*, 32 Hun, 301.) The law does not favor intestacy, nor a failure of heirs, descendants and next of kin, where a devise or bequest is made to the children, and relations of one or more persons, the legal presumption is that at the time of the making of the will, and the testator's death, there were persons answering the description in the will. (*People* v. *F. F. Ins. Co.*, 25 Wend. 218.)

FOLLETT, Ch. J. Action No. 1, ejectment, was brought to recover a lot in the city of New York, known as No. 325 Third street, of which James D. Gallagher died seized.

Action No. 2, ejectment, was brought to recover a lot in said city, known as No. 34 Scammel street, of which James D. Gallagher died seized.

He left a will executed April 16, 1843, which was duly probated January 29, 1845, by which he devised all of his realty and bequeathed all of his personalty to his widow, Ellen Gallagher, during life, subject to the payment of three dollars per week (before his widow's death) for the support of his brother John N. Gallagher, if he should be unable to maintain himself. After the death of the widow he directed that $1,000 should be paid to the Roman Catholic Orphan Asylum; $1,000 should be divided between Edward Harrigan and Bernard Harrigan, and he authorized his widow to bequeath $1,000 to any person she might see fit; "the remainder, if any, to be equally divided between the children of John Grady and all my relations by my father's side" that were in the United States at the date of his will, subject to the payment of four dollars per week (after his widow's death) for the support of his brother John N. Gallagher, if necessary for his maintenance. The will contains the following clause: "He (John N. Gallagher) is to have nothing from my property, and I hereby cut off from inheriting anything or property of mine, his wife (Rebecca), or any person in any way related to her, either by blood or marriage, with the exception of himself, and he only in the way I have stated above."

It seems to be undisputed that in 1798 John Gallagher emigrated from Ireland to the United States, soon thereafter became a resident of the city of New York, where he and Catherine Gallagher intermarried, at which city he died in 1836, leaving his widow and two sons, James D. Gallagher and John N. Gallagher, both born in New York, who were his only heirs. About 1842, Catherine, the widow of John and the mother of James D. and John N., died. In 1833, John N. Gallagher and Rebecca Noe intermarried at the city of New York, where they resided as husband and wife until December 4, 1875, when he died, leaving Rebecca, his widow, John N., Thomas B., Catherine F., Rebecca T. and Mary L., his children and only heirs. Mary L. and Charles A. Hammer intermarried and subsequently both died, leaving Charles A. Hammer and Norman Hammer, their children and only

heirs. Ellen Gallagher, the widow of James D., the testator, died July 1, 1879.

These actions were begun in 1886 by the heirs of John N. Gallagher, who claimed the fee of the lots, and by Rebecca Gallagher, his widow, who claims a dower right in them. The defendants answer that Susan Crooks and John Crawford were lawfully seized of both lots in fee, but how they acquired title, if any they have, or possession of the lots, is not disclosed by the answers nor by the evidence. The other defendants are tenants of Crooks and Crawford.

The clause in the will above quoted, by which the testator attempted to disinherit his brother, his wife and their descendants, does not defeat the right of these plaintiffs to the estate. unless the persons to whom the testator attempted to devise the remainder were in existence. In case a testator fails to make a legal devise of his realty, or if having legally devised it the devise fails for any cause, the heir will inherit, notwithstanding there is an express provision in the will that he shall not take any part of the estate. There must be a legal devise to cut off the right of the heir to inherit; mere words of disinheritance are insufficient to effect that purpose. (*Haxtun* v. *Corse,* 2 Barb. Ch. 521; *Chamberlain* v. *Taylor,* 105 N. Y. 185, 193; *Fitch* v. *Weber,* 6 Hare, 145; *Pickering* v. *Stamford,* 3 Vesey, 493; *Johnson* v. *Johnson,* 4 Beav. 318; 2 Jar. Wills [Bigelow's ed.], 841; 1 Red. Wills [4th ed.], 425.)

To entitle the plaintiffs to recover they were bound to establish, (1) that John Grady left no children; (2) that the testator had no relatives by his father's side in the United States at the date of his will, or at the date when the devise of the remainder took effect. These were the facts in issue.

Rebecca Gallagher, the widow of John N., who was seventy-nine years of age when her deposition was taken, testified that she knew John Grady, a nephew of the testator's wife, and that he had been dead several years, that he never married, and left no children. This witness also testified that she was familiar with the history of the family of her husband and of his father, and that she had heard the father, John Gallagher,

say that he was the only child of his parents, who died in Ire-
land, and that he had no relatives living.   Her evidence was
corroborated by her sons.   If this testimony is true, and it was
not contradicted, the testator had no relatives living in the
United States at the date of his will or death, unless he
intended that the words " all my relations by my father's side "
should include the descendants of his great-grandfather, or of
some more remote ancestor.   It was not shown whether the
great-grandfather left any descendants other than those in the
line of the testator's family, but it was shown that the plain-
tiffs are all of the descendants of the testator's father.   Accept-
ing the Mosaic account of the origin of the human race, the
testator must have had, at the date of his will and at the date
of his death, collateral relatives on his father's side, of some
degree, in the United States.   But such a broad interpretation
of the meaning of the word " relations " would render the
devise void for indefiniteness, and it is well settled that the
word when used in wills relating to personalty only embraces
persons within the Statute of Distribution.   (*Edge* v. *Salis-
bury*, 1 Amb. 70; *Crossly* v. *Clare*, Id. 396; *S. C.*, 3 Swanst.
320; *Harding* v. *Glyn*, 1 Atk. 469, and cases cited in San-
ders' note; *Goodinge* v. *Goodinge*, 1 Ves., Sr., 231; *Varrell* v.
*Wendell*, 20 N. H. 431; *Ennis* v. *Pentz*, 3 Bradf. 382;
*Eagles* v. *LeBreton*, L. R. [15 Eq.] 148; *Hibbert* v. *Hibbert*,
Id. 372; 2 Jar. Wills [Big. ed.], 120; 2 Red. Wills [3d ed.],
85; 2 Wm. Ex. [6 Am. ed.] 1205; 4 Kent's Com. [13th ed.]
537, note a.)   But whether, in case of a devise, the word
" relations " embraces only persons within the Statute of Dis-
tribution, as was held in *Doe* v. *Over* (1 Taunt. 263), or only
the class within the Statute of Descent, we will not now
decide.   The English cases cited, which relate to devises, arose
before the English Statute of Descents (3 & 4 Will. IV, c.
106), and when the descent of realty in that country was
determined by the rules of the common law.   (1 Steph. Com.
[8th ed.] 387; Will. Real Pr. [12th ed.] 100.)   While the
evidence does not make the existence of relatives of the tes-
tator by the father's side in the United States, which were

within the classes embraced within the Statute of Distribution or the Statute of Descents, impossible, it does render the existence of such persons improbable. It is seldom possible to demonstrate, or establish to an absolute certainty, the existence or the non-existence of the facts at issue between the litigants, and the law does not require such a high degree of proof, but such evidence as renders the existence of the facts in issue, and upon which the right to recover depends, probable, is sufficient to require the party who denies their existence to sustain his denial by evidence. Certainty is not required to convict persons of criminal offenses. We think, from the evidence, that it is probable that no persons of either class mentioned in the testator's will were in existence at its date, or have been since, and that the plaintiffs made out a *prima facie* case.

The judgments should be reversed and new trials granted, with costs to abide the event.

All concur.

Judgments reversed.