(26 Misc. Rep. 90.)

## CLEMENTS et al. v. BABCOCK et al.

(Supreme Court, Special Term, Orange County. January, 1899.)

1. WILLS—BEQUESTS TO CHARITABLE INSTITUTIONS—VALIDITY.

Laws 1848, c. 319, § 6, provides that any benevolent corporation formed thereunder may hold any property bequeathed to it, provided no person leaving a wife, child, or parent shall bequeath more than one-fourth of his estate, and no such bequest shall be valid in any will which is not executed two months prior to testator's death. *Held*, that a bequest to such an institution by will executed within two months of testator's death is invalid, though testator has no wife, child, or parent.

2. SAME—UNDISPOSED INTEREST—RIGHT OF EXECUTORS.

Where a will provides that, if any bequests lapse, then such legacies shall go to his executors absolutely, a bequest failing to take effect be-

cause made to a benevolent institution less than two months prior to testator's death goes to his executors absolutely.

**3. SAME—MUNICIPAL CORPORATIONS.**
Under the Middletown city charter (Laws 1888, c. 535, § 1), providing that the city may take by bequest, and hold, any property for erection of public buildings, on such terms as may be prescribed by the donor, a bequest to the city for the erection of a public library building, under direction of persons named in the will, is valid, though the will is executed less than two months prior to testator's death; since Laws 1848, c. 319, § 6, providing that no bequest to any benevolent society shall be valid unless made more than two months prior to testator's death, does not extend to bequests to municipal corporations.

**4. SAME—CONVERSION—RIGHT OF HEIRS.**
Where testator, in his will, makes no devise of his real estate, but directs his executors to sell it, and pay the proceeds to those entitled thereto, such direction does not operate as a conversion, so as to affect the right of testator's heirs.

Action by Isaac R. Clements and others against Dwight Babcock and others for the construction of the will of S. Maretta Thrall, deceased.

Daniel Finn, for plaintiffs.
Hoelljes & Sullivan, for defendant Henry R. Russell.
Charles W. Coleman, for defendant Wilson Laraway.
Francis B. Chedsey, for defendants Willis D. Ives and others.
A. V. N. Powelson, for defendants Dwight Babcock and others.
John C. R. Taylor, for defendant city of Middletown.
George H. Decker, for defendant Thrall Hospital.
R. C. Coleman, for defendants Maud Laraway and others.
Crowell & Kerr, for defendants Louisa Sprague and others.
John C. Gulick, for defendants Jennie Granger and Agnes Thurman.
William Vanamee, for defendant Joseph B. Scott.
Barna Johnson, for defendants Philo F. Thurman and others.
Frank Schaeffler, for defendants Kate Welch and others.
Henry W. Wiggins, for defendants David Laraway and others.

HIRSCHBERG, J.   S. Maretta Thrall died July 7, 1897.   She left no descendant, husband, parent, grandparent, brother, sister, uncle, aunt, nephew, or niece.   Her nearest relatives are cousins, and the children or descendants of deceased cousins.   These are numerous, and both of her father's and mother's blood.   She was the owner of considerable real and personal estate, the real estate having been acquired by inheritance from her father.   Her will was executed June 17, 1897.   By its terms, she gave certain specific and general legacies to cousins on either side, and the sum of $10,000 to the Thrall Hospital, of Middletown.   On June 26th she executed a codicil, giving an additional sum of $10,000 to the hospital, and the sum of $30,000 to the city of Middletown, to be used in the construction of a public library building.   On July 3d she executed a second codicil, containing, among certain specific bequests, a provision that, in case any of the legacies and bequests should lapse or become void or ineffectual to vest the legacies in the persons or corporations to whom the same are given for any cause whatsoever, then such lapsed, void, or ineffectual legacies are given to Isaac R. Clements and Nathan M. Hallock

absolutely in equal portions.    Neither the will nor the codicils con-
tained a residuary clause.    The will contained this provision:

"Sixteenth. I hereby give and grant unto my executors hereinafter named,
or to the survivor of them, or to the one who shall qualify to act as such,
full power and authority to sell at public or private sale, at such time or
times as they or he may deem advisable, all or any part of the real estate
of which I may die seised or possessed, and upon such terms as to them shall
seem proper, hereby giving and granting unto my said executors, or to the
survivor, or to the one who shall qualify to act as such, full power and au-
thority to execute all such contracts, instruments, deeds, and conveyances as
may or shall be necessary to vest the title of my said real estate, or any part
thereof, in the purchaser or purchasers of the same, or any portion thereof."

The second codicil contains this provision:

"Lastly, I also order and direct the executors named in my last said will
and testament to sell and convert into money, as soon after my death as
due regard for the interest of my estate will warrant, all the real estate of
which I may die seised and possessed, and to pay the proceeds received there-
from to those entitled thereto."

The will and codicils having been duly admitted to probate in
Orange county, this action is instituted for judicial construction
on the questions of the validity of the gifts to the Thrall Hospital
and the city of Middletown, their disposition in case of invalidity, and
the distribution of the proceeds, whether among the heirs at law as
real estate, and limited to the father's side, or as converted into per-
sonal estate, and including next of kin of the mother's blood.

The legacies to the Thrall Hospital are void.    That institution
was incorporated in the year 1887, by virtue of chapter 319 of the
Laws of 1848, entitled "An act for the incorporation of benevolent,
charitable, scientific and missionary societies."    The act was repealed
by the passage of the membership corporations law, taking effect
September 1, 1895, with the exception of section 6.    That section pro-
vides as follows:

"Any corporation formed under this act, shall be capable of taking, holding
or receiving any property, real or personal, by virtue of any devise or bequest
contained in any last will or testament of any person whatsoever, the clear
annual income of which devise or bequest shall not exceed the sum of ten
thousand dollars; provided, no person leaving a wife or child or parent, shall
devise or bequeath to such institution or corporation more than one-fourth
of his or her estate, after the payment of his or her debts, and such devise
or bequest shall be valid to the extent of such one-fourth, and no such de-
vise or bequest shall be valid, in any will which shall not have been made
and executed at least two months before the death of the testator."

The precise point seems to have been decided in Stephenson v.
Short, 92 N. Y. 433.    In that case the surrogate of Ontario county
decided that the two-months clause applied only to cases where the
testator left a wife, child, or parent; but his determination was re-
versed at the general term, and the reversal affirmed in the court of
appeals.    The latter court, referring to the three provisions embraced
in section 6, said (page 439):

"We think it very clear that the first provision related to the power of the
corporations to take; the second, to the power of the testators, in certain
cases, to give to them; and the third, to the time which in all cases must
elapse between the execution of the will and the death of the testator to
render the gift valid."

56 N.Y.S.—34

These legacies are therefore given by the express terms of the second codicil to the two executors, individually, equally, and absolutely. After providing, in the twelfth paragraph of that codicil, for such a disposition of any of the legacies and bequests which shall lapse or become void or ineffectual to vest the gift in the persons or corporations named, the testatrix adds:

"It is my intention that the said Isaac R. Clements and Nathan M. Hallock shall take absolutely in equal proportions each and every legacy given and bequeathed by my last will and testament or the codicil thereto which bears date, June 26, 1897, which from any cause whatsoever shall lapse or be void or be ineffectual to vest the legacies in the persons or corporations named in the said will and codicils."

In the very recent cases of Fairchild v. Edson and Edson v. Bartow, 154 N. Y. 199, 48 N. E. 541, the will under consideration provided that, in case any legacy "shall lapse, fail, or from any cause not take effect, I give and bequeath the amount which shall lapse, fail, or not take effect absolutely to the persons named as my executors. In the use of the same I am satisfied that they will follow what they believe to be my wishes. I impose upon them, however, no conditions, leaving the same to them personally and absolutely, and without limitation or restriction." This was held to constitute upon its face an absolute and valid gift to the executors as individuals, and not to import a trust of any kind. In some of the answers, however, the defendants allege that Mrs. Thrall made the provision for her executors under a secret agreement for the purpose of evading the statute, and to the effect that they should and would apply the gifts in question to the uses of the individual or corporation affected by the lapse or invalidity. Equity would undoubtedly relieve the heirs and next of kin from the consequences of such an agreement, on the authority of the cases cited, whether the agreement was expressed in words or implied by tacit acquiescence, and would impress the fund in the hands of the legatee with a trust for the benefit of those otherwise entitled. But the evidence in this case not only fails to establish such an agreement, but, as far as there has been any testimony adduced, affirmatively establishes the contrary. I find that the gifts to the executors are absolute and unconditional in fact, and that they are not in pursuance of any secret or other trust in evasion of the statute or otherwise.

The gift to the city of Middletown is valid. The city was incorporated by chapter 535 of the Laws of 1888. Section 1 enumerates among its corporate powers that:

"It may take by gift, grant, bequest and devise, and hold real and personal estate in trust for any purpose of education, art, health, charity or amusement, for parks, gardens, the burial of the dead, the erection of statues, monuments, public buildings, or other public use, upon such terms as may be prescribed by the grantor or donor and accepted by said corporation, and may provide for the proper execution of said trust."

The bequest in question is made in these words:

"Third. I give and bequeath to the city of Middletown, in the county of Orange, and state of New York, the sum of thirty thousand ($30,000) dollars, to be its and its successors' forever, upon condition, however, that the said city of Middletown, N. Y., uses said moneys in building and constructing a

public library building on the lot of land which said city owns, situate on Orchard street, in said city of Middletown, N. Y., the said library building to be known as 'The Thrall Library Building.' The said library building to be built in accordance with the plans and specifications which shall be approved by L. F. Olney, of Mahwah, N. J., John W. Slawson, and Frank J. Lindsey, of Middletown, N. Y. The said Olney, Slawson, and Lindsey shall have the full charge of the planning, construction and building of the said library building, and of the disbursing on behalf of the city of Middletown, N. Y., of all moneys hereby given and bequeathed to the said city for the said library building. The said library building shall be fully completed within the term of two years from the time the said city of Middletown, N. Y., receives the said sum of thirty thousand ($30,000) dollars, hereby given to it. The said library building shall at all times be kept for the use of the public, subject to such rules and regulations as the board of education of the city of Middletown, N. Y., or its successors, shall from time to time adopt and provide for its government and regulation."

It is evident that the gift is for a strictly corporate purpose, and it has been duly accepted by the city, upon all the terms and conditions set forth in the codicil.     It is claimed, however, that the gift is within the scope of the act of 1848, and void, because less than two months intervened between the execution of the will and the testatrix's death. The statute has never been extended beyond the class of corporations included in its title, viz. benevolent, charitable, scientific, and missionary, and such other corporations, chiefly religious and educational, as by their charters are expressly subjected to all provisions of law in relation to devises by will.

I find no case holding that the prohibition as to time extends to a legacy or devise to a municipal corporation.     On the contrary, in Re Crane's Will, 12 App. Div. 271, 42 N. Y. Supp. 904, an analogous statute (Laws 1860, c. 360) was under consideration, and the reasoning of the court seems quite applicable here.     The court said (page 276, 12 App. Div., and page 907, 42 N. Y. Supp.):

"This act applies to benevolent, charitable, literary, scientific, religious, or missionary societies; in other words, to a particular class of private corporations.     It does not apply to the state, nor to individuals, nor to public or municipal corporations.     The maxim, 'Expressio unius est exclusio alterius,' is here applicable.     It is true that the purpose of the act was as pointed out in Chamberlain v. Chamberlain, 43 N. Y. 440, 'to prevent a person upon whom others standing in near relation had claims from disappointing their just expectations, and disinheriting them from pious or philanthropic motives.' As a practical limitation upon such a purpose, the various societies, associations, or corporations likely to be considered by one contemplating disinheritance were enumerated and placed under the special prohibition. The object was not specifically to prevent a person from disinheriting those having claims upon him, nor to limit the power of disposition generally. The danger was supposed to be in the occasional tendency to disinherit from pious or philanthropic motives; and thus the societies which furnished the readiest facilities for the gratification of this impulse were specified. In all other directions it was thought that testators might properly be left to the operation of natural laws."

As to the proceeds of the sale of the real estate, I have reached the conclusion that there is no such equitable conversion out and out as to change the character of the property for the purposes of succession, but that, on the contrary, the heirs are still "entitled" to such proceeds in case of sale.     The whole theory of conversion rests upon the intention of the testator, and can only be invoked to aid, never to

thwart, such intention.    If the conversion is directed in order to carry out the purposes of the will, and such purposes fail for any cause, or if, after carrying out such purposes, there remains a surplus, the property converted or the balance remaining will retain its original character.    "The important question," said Judge Danforth, in Parker v. Linden, 113 N. Y. 37, 20 N. E. 860, "is whether the direction for the conversion is, by the terms of the will, absolute and imperative, so as to be complete to all intents and purposes, or whether the conversion directed is for the purposes of the will only.    If the latter, then if those purposes fail, or do not exhaust the proceeds, the property unapplied, whether the estate has been actually sold or not, will devolve according to its original character."    So, too, if the sale is directed for the evident purpose of more convenient distribution among those primarily entitled, no conversion will take place, however imperative and absolute may be the direction for a sale.    In re Tienken, 131 N. Y. 391, 30 N. E. 109; Miller v. Gilbert, 144 N. Y. 68, 38 N. E. 979.    See, also, Chamberlain v. Taylor, 105 N. Y. 185, 11 N. E. 625.

On the death of the testatrix, her real estate descended to her heirs. Their title could only be devested by a devise to others, or, what is equivalent, by an imperative direction for a sale of the real estate, and a distribution of the proceeds among others.    "A devise of the proceeds of lands directed to be sold by the executors is a devise of the land."    Byrnes v. Baer, 86 N. Y. 210.    "It is a settled principle of law," said the court in Chamberlain v. Taylor (page 193, 105 N. Y., and page 627, 11 N. E.), "that the legal rights of the heir or distributee to the property of deceased persons cannot be defeated except by a valid devise of such property to other persons.    Haxtun v. Corse, 2 Barb. Ch. 506, 521; Jackson v. Schauber, 7 Cow. 187, 195; Post v. Hover, 33 N. Y. 593, 597; White v. Howard, 46 N. Y. 144; Hawley v. James, 16 Wend. 61.    It was said by the chancellor in Haxtun v. Corse, that 'it was not sufficient to deprive an heir at law or distributee of what comes to him by operation of law, as property not effectually disposed of by will, that the testator should have signified his intention by his will that his heir or distributee should not inherit any part of his estate.    But, to deprive an heir or distributee of his share of the property which the law gives him in case of intestacy, the testator must make a valid and effectual disposition thereof to some other person.' "

To the same effect is Gallagher v. Crooks, 132 N. Y. 338, 30 N. E. 746.    The court said (page 342, 132 N. Y., and page 746, 30 N. E.):

"The clause in the will above quoted, by which the testator attempted to disinherit his brother, his wife, and their descendants, does not defeat the right of these plaintiffs to the estate, unless the persons to whom the testator attempted to devise the remainder were in existence.    In case a testator fails to make a legal devise of his realty, or if, having legally devised it, the devise fails for any cause, the heir will inherit, notwithstanding there is an express provision in the will that he shall not take any part of the estate. There must be a legal devise to cut off the right of the heir to inherit; mere words of disinheritance are insufficient to effect that purpose.    Haxtun v. Corse, 2 Barb. Ch. 521; Chamberlain v. Taylor, 105 N. Y. 185, 193, 11 N. E. 625; Fitch v. Weber, 6 Hare, 145; Pickering v. Stamford, 3 Ves. 493; Johnson v. Johnson, 4 Beav. 318; 2 Jarm. Wills (Bigelow's Ed.) 841; 1 Redf. Wills (4th Ed.) 425."

The testatrix died intestate as to upward of $40,000 of her personal estate, and the will and codicils contain no devise of her real estate. It follows from these decisions that the title to the latter vests immediately in the heirs, subject only to the right of the executors to exercise the power of sale for the purposes of convenient distribution. It is contended, however, on behalf of the defendants, who are cousins on the side of the testatrix's mother, that the direction for a sale has converted the real estate into money, and that the direction to pay the proceeds to those entitled thereto is a devise pro tanto to all those, other than the heirs, who would have been entitled to share in the money had the deceased left the property in that form. The difficulty in the way of this construction is that there is nothing in the will indicating an intention to deprive the heirs of their title to the real estate, or to devise any interest in it to others. If such intention is inferred, it must be solely on the assumption that there has been an equitable conversion, and that, therefore, the words "those entitled thereto," include all who would take a share in the personal estate. But we have seen that the law is settled that there can be no conversion so as to devest the heir, unless the power of sale is accompanied by a lawful devise to some one else. We must be able to find the conversion from the devise, and are not at liberty to spell out the devise on the theory of a conversion. The testatrix is presumed to know the condition of her estate, as well as the provisions of the will and codicils. The specific and general legacies amount to about $75,000. The inventory of the personal estate is upward of $117,000. The testatrix undoubtedly knew that her personal estate largely exceeded the legacies, and that all her cousins would share equally in the excess. If she desired them to also share in her real estate, she had but to say so. She presumably knew that, dying intestate as to her real estate, it would descend to her cousins on her father's side, the side from which it came. They would be and became "entitled" to it. She directed her executors to sell it, and divide the proceeds among those entitled to the same. This language recognizes rather than devests the "title" of the distributees. It carries no suggestion of a gift or devise to persons otherwise not entitled. It conveys no thought of disinheritance. In effect, it is impossible to distinguish it from the provision in Re Bingham, 127 N. Y. 296, 27 N. E. 1055, where it was held that a will by which the testator gave his estate to his heirs and next of kin in the same portions in which it would be divided or distributed in case of his death intestate, but directing the real estate to be sold by his executors, and the proceeds distributed in cash, did not operate to convert the real estate into personalty.

As was said by Judge Finch, in Re Tienken (page 409, 131 N. Y., and page 112, 30 N. E.):

"The rule of construction founded upon a gift flowing only from a direction to divide has many exceptions, and is to be used as an aid to ascertain the intention, and not as a force to pervert it. I have observed in general that, where it has prevailed, it has been where no contrary intention was fairly indicated, and where its own force was somewhat strengthened and its indication corroborated by further facts. We feel quite satisfied in the present case that the trust postponed only the period of enjoyment, and the sale was intended to conveniently sever the interests of those already entitled."

As the heirs can only be deprived of their rights and interests in the real estate by either an actual devise of the real estate itself to some one else, or by a direction to convert into money, accompanied by a like bequest of the proceeds, it necessarily follows that a mere direction to sell and to pay over the money received to those entitled will not operate as a conversion in destruction of the rights of descent, whether the words "those entitled" be construed to relate to the real estate or the money which represents it.

The authorities cited in the briefs on behalf of the maternal cousins are numerous, and occasional remarks of the court would seem to support their contention. The facts characterizing the cases are essentially different from the one at bar. In all there will be found some form of devise, by way of trust or otherwise. There is nothing in any of them, however, in real conflict with the views herein expressed, and certainly nothing to the effect that a direction to sell real estate and pay over the proceeds to those entitled thereto of itself operates to destroy, impair, or diminish the title of the owner by way of equitable conversion or on any other theory.

A decree will be settled on notice deciding that the deceased died intestate as to her real estate and as to the excess of her personal property after the payment of the specific and general legacies and the debts and testamentary expenses; that the legacy to the city of Middletown is valid; that the legacies to the Thrall Hospital are void, and should be paid to the executors individually; that the real estate is vested in the first cousins of the deceased, being the children of her father's brothers and sisters, subject to the execution of the power of sale; and that the personal property undisposed of by will is to be distributed among the next of kin of the deceased nearest in relation to her, and in equal degree. Adee v. Campbell, 79 N. Y. 52. Ordered accordingly.